IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TELMA S. DIAZ, | ) | 4:12CV3144 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| JEREMIAH D. JOHNSON, in his individual capacity, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Telma Diaz was arrested by Nebraska State Trooper Jeremiah D. Johnson in March 2010 and was subsequently charged with two counts of distribution of methamphetamine, based on sales she allegedly made to a confidential informant in January 2008.  The criminal charges were dismissed in September 2010 when the confidential informant was unable to identify Diaz as the person who sold him the methamphetamine.

Claiming infringement of her constitutional rights, Diaz has brought suit for damages under 42 U.S.C. § 1983 against Trooper Johnson in his individual capacity. Diaz claims Johnson (1) made the arrest without probable cause and (2) deprived her of substantive due process by conducting a reckless investigation.

Trooper Johnson has moved for summary judgment based on the defense of qualified immunity. For the reasons discussed below, the motion will be granted in part and denied in part.

# I. APPLICABLE LAW

## A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has "the obligation to come forward with specific facts showing that there is a genuine issue for trial." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty., Minn.*, 621 F.3d 740, 743 (8th Cir. 2010)).

An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question.  *Woods v. Daimlerchrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

## B. Qualified Immunity

Qualified immunity protects police officers from civil liability for any action that does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011) (quoting *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007)).  The immunity allows "officers to make reasonable errors" and provides "ample room for mistaken judgments." *Id.* (quoting *Habiger v. City of Fargo et al.*, 80 F.3d 289, 295 (8th Cir. 1996), and *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).  The defense protects public officials unless they are "plainly incompetent" or "knowingly violate the law." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

Determining the question of qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Santiago v. Blair*, 707 F.3d 984, 989 (8th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If no reasonable factfinder could answer yes to both of these questions, the officer is entitled to qualified immunity. *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir.2009).

## II.  UNDISPUTED FACTS

Under our local rules, a party moving for summary judgment "must include in the brief in support of the summary judgment motion a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). "The party opposing a summary judgment motion must include in its brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." *Id.*

Trooper Johnson's supporting brief includes a 129-paragraph[1] statement of material facts, with appropriate references to the record.[2]  Most of these facts are not

_____

[1] Although the final paragraph is numbered 127, the statement of material facts includes two paragraphs numbered 13 and two paragraphs numbered 14.

[2] The local rule specifies that "[t]he statement of facts should consist of short numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a)(2) (underlining in original).  Similarly, "[e]ach material fact in the [opposing party's] response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line),

-3-

controverted by Diaz.[3]   After carefully reviewing the parties' pleadings, briefs, and filed evidentiary materials, I find there is no genuine dispute concerning the following material facts stated in Trooper Johnson's brief:

> 1. Plaintiff, Telma Diaz, is a resident of Lexington, Dawson County, Nebraska. (Complaint, Filing No. 1, ¶ 1).

> 2. Defendant, Jeremiah Johnson ("Trooper Johnson") is currently employed with the Nebraska State Patrol ("NSP") as a Trooper and has been employed in that position since 2002. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 1).

> 3. Prior to joining the NSP, Trooper Johnson was employed with the United States Air Force from 1996 through 2000 and the Warner Robbins Police Department as a Patrol Officer from 2000 through 2002. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 2).

> 4. Trooper Johnson has undergone substantial training as a Trooper, including basic training and ongoing in-service training. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶¶ 3-7).

> 5. From 2006 through 2011, Trooper Johnson was employed as an NSP Investigator in the Drug Division out of McCook, Nebraska. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 8).

---

or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." NECivR 56.1(b)(1).

[3] Diaz disputes paragraphs 10-17, 33, 43, 46-49, 52, 53, 57, and 89 of Johnson's statement of material facts.  Her objections to each of these paragraphs will be examined below.  Additional facts reference by Diaz (Plaintiff's Brief (filing 33) at CM/ECF pp. 8-9,  ¶¶ 1-13) will also be noted when supported by the evidence or not controverted by Trooper Johnson.

6. As an Investigator in the Drug Division, Trooper Johnson's duties included, but were not limited to, conducting under cover controlled substance and/or narcotics purchases, surveillance on individuals suspected in the distribution and/or use of controlled substances and/or narcotics, and confidential informant management, which included monitoring and controlling confidential informants during controlled purchases of controlled substances and/or narcotics. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 9).

7. Trooper Johnson also received numerous hours of in-service training and other education sponsored by the NSP and/or allied agencies specific to controlled substance and/or narcotics investigations. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 10).

8. Trooper Johnson has an impeccable record and has never been subject to investigation or discipline for any reason during his sixteen-year law enforcement career. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 64).

9. On January 29, 2008, at approximately 1:10 p.m., Trooper Johnson met with a confidential informant ("CI") in Lexington, Nebraska, to conduct a controlled purchase of methamphetamine. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 12; see also Exhibit 2, Case Report dated January 29, 2008, p. 1).

10. This particular CI was identified by the NSP as CI #595-3541,[4] and had worked with two separate NSP investigators over a period of

_____

[4] The name of the confidential informant is disclosed in Plaintiff's brief and in several of Plaintiff's exhibits. Defendant has filed a motion to seal these documents (filing 41), and Plaintiff has objected (filing 43). The motion will be denied for lack of a sufficient showing. The court notes, incidentally, that Defendant has also filed unsealed documents (Exhibits 23-25 (filing 47-1 at CM/ECF pp. 17-25)) that contain the confidential informant's name.

two to three years. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 13).[5]

11. Prior to Trooper Johnson's case investigations with this CI, the CI conducted approximately ten controlled purchases with NSP investigators and introduced undercover police officers to several drug investigation targets, which in turn led to more controlled purchases. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 13).

12. In the past, the CI had also provided reliable information to investigators which helped those investigators obtain several search warrants and locate large amounts of methamphetamine, currency, and weapons. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 13).

13. With the assistance of CI #595-3541, NSP investigators secured approximately twenty-one federal indictments and convictions. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 13).

---

[5] Diaz objects that paragraph 13 of Trooper Johnson's affidavit, which he cites in support of paragraphs 10 through 17 of the statement of material facts, "is hearsay and there is no foundation establishing its reliability" (Plaintiff's Brief (filing 33) at CM/ECF p. 2). This objection is overruled. Diaz also "disputes the facts based on Defendant's answers to Diaz's Interrogatories 5 and 6, asking for any investigative or other reports or documents related to [the confidential informant's] conduct as an informant. (Exhibit 104, #5 and 6)" (Plaintiff's Brief (filing 33) at CM/ECF p. 2). Trooper Johnson did not answer these interrogatories, but instead objected that the information sought was irrelevant and outside the scope of discovery permitted by the court's progression order (Exhibit 104, Defendant's Answers to Plaintiff's First Set of Interrogatories (filing 36-13 at CM/ECF pp. 5-6)). Johnson's attorney also advised Diaz's attorney that the State of Nebraska would not produce information regarding the confidential information without a court order (Exhibit 19, Affidavit of Kari Scheer (filing 47-1 at CM/ECF p. 2), ¶¶ 10-14). Trooper Johnson's objections to interrogatories have no probative value and cannot be used by Diaz to defeat the motion for summary judgment. Diaz has not filed a motion to compel discovery of the requested information.

14. Both of the NSP investigators that worked with CI #595-3541 told Trooper Johnson that the CI was reliable. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 13).

13[*sic*]. After the NSP began securing indictments with the CI's help, the CI was made inactive and moved to another location so the CI would not be subject to harm. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 14).

14 [*sic*.] After being inactive for a few months, the CI returned to Lexington and Trooper Johnson began using the CI. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 14).

15. During his use of the CI, Trooper Johnson also found the CI to be reliable. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 14).

16. Trooper Johnson is not aware of any case in which the CI has misidentified a suspect. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 14).

17. Additionally, with the exception of this case, Trooper Johnson is not aware of any case involving CI #595-3541 that was not prosecuted because the CI was later unable to identify the person who sold the CI drugs. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 14).

18. Before Trooper Johnson's January 29, 2008 meeting with the CI, the CI advised Trooper Johnson that the CI had had just arranged a controlled purchase of 1.5 grams of methamphetamine for $160.00 from someone named "Telma." (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 15; see also Exhibit 2, Case Report dated January 29, 2008, p. 1).

19. The CI did not tell Trooper Johnson "Telma's" last name. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 15).

20. Due to the CI's thick Spanish accent, Trooper Johnson believed the CI meant "Thelma Flores," a known methamphetamine distributor in the area who was a high priority target for the Nebraska State Patrol. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 15).

21. Consequently, Trooper Johnson arrived at the January 29, 2008 meeting with a Department of Motor Vehicles' photograph of Thelma Flores. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 15).

22. During the January 29, 2008 meeting, the CI contacted "Telma" in Trooper Johnson's presence by dialing cellular telephone number 308-324-2696 and informed her that the CI was en route to meet with her. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 16; see also Exhibit 2, Case Report dated January 29, 2008, p. 1).

23. "Telma" instructed the CI to park in the parking lot of the Latino's Shop, 731 East Pacific Street, Lexington, which is located across the street from the Willow Ridge Trailer Park, and stated that she would meet the CI in the parking lot within the next fifteen minutes. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 16; see also Exhibit 2, Case Report dated January 29, 2008, p. 1).

24. The CI told Trooper Johnson that "Telma" would be driving a white Ford F-150 pickup. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 16; see also Exhibit 2, Case Report dated January 29, 2008, p. 1).

25. Before the CI left to meet "Telma," Trooper Johnson searched the CI and the CI's vehicle for any illegal contraband and did not find any. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 17; see also Exhibit 2, Case Report dated January 29, 2008, p. 1).

26. Trooper Johnson also equipped the CI with an electronic surveillance device, allowing surveillance officers to monitor and record

the conversation between the CI and "Telma." (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 17; see also Exhibit 2, Case Report dated January 29, 2008, p. 1).

27. Trooper Johnson then gave the CI $160.00 to purchase the methamphetamine. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 17; see also Exhibit 2, Case Report dated January 29, 2008, p. 1).

28. NSP Investigators Bill Redinger, Becky Harris, Dean Riedel, and Special Agent Stacey Slater with the Drug Enforcement Agency assisted with surveillance of the controlled purchase. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 18).

29. Special Agent Slater and Trooper Johnson were located approximately 700 feet to the north of the Latino's Shop parking lot. Investigator Redinger was approximately 300 feet to the east of the controlled purchase and Investigators Harris and Riedel were approximately 150 feet to the west of the controlled purchase. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 19).

30. Because the investigators believed "Telma" would be coming from the Willow Ridge Trailer Park, Investigator Redinger was parked near the exit of the trailer court. Investigators Harris and Riedel were conducting surveillance from a vehicle parked across the parking lot of the purchase location. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 19).

31. The CI arrived at the designated parking lot at 1:30 p.m. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 20; see also Exhibit 2, Case Report dated January 29, 2008, p. 1).

32. At 1:33 p.m., the CI received a telephone call from "Telma" using cellular telephone number 308-324-2696. "Telma" asked the CI if the CI was waiting in the parking lot. The CI stated that the CI was waiting and "Telma" indicated that she was on her way. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 20; see also Exhibit 2, Case Report dated January 29, 2008, p. 1).

-9-

33. At 1:36 p.m., Trooper Johnson observed a white Ford F-150 pickup leave the Willow Ridge Trailer Park and enter the parking lot of the Latino's Shop. As the vehicle exited the trailer park, Investigator Redinger took photographs of the vehicle. However, Investigator Redinger has since retired and the photographs have been lost or destroyed. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 21; see also Exhibit 2, Case Report dated January 29, 2008, p. 2).[6]

34. The white Ford F-150 drove up to the CI's vehicle, at which time the CI exited the vehicle and made contact with "Telma" who was the lone occupant in the Ford F-150. (Exhibit 1, Affidavit of Nebraska

---

[6] Diaz disputes that the photographs taken by Investigator Redinger have been lost or destroyed because "Defendant's affidavit provides insufficient foundation to establish any personal knowledge on this issue" (Plaintiff's Brief (filing 33) at CM/ECF p. 3). This objection is overruled. Trooper Johnson's affidavit recites that it is based on personal knowledge (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 1), ¶ 1), and Johnson has submitted a supplemental affidavit in which he further explains that he first discovered the photos were missing in 2010 when he was preparing an affidavit to support an arrest warrant for Diaz, and that he was unable to locate the photos after searching files, computer databases, and cameras, and after contacting Investigator Redinger (Exhibit 21, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 47-1 at CM/ECF pp. 10-11), ¶¶ 8-9).

Diaz contends the Nebraska State Patrol has also claimed that "investigative reports . . . have gone missing" (Plaintiff's Brief (filing 33) at CM/ECF p. 2), but the evidence indicates that the only reports the Patrol made with regard to her are the two case reports that were produced during discovery and that are contained in the record (Exhibit 105, Defendant's Responses to Plaintiff's Request for Production of Documents (filing 35-14); Exhibit 20, Letter from Nebraska State Patrol Agency Counsel to Plaintiff (filing 47-1 at CM/ECF p. 8); Exhibit 19, Affidavit of Kari Scheer (filing 47-1 at CM/ECF pp. 1-2), ¶¶ 4-7; Exhibit 21, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 47-1 at CM/ECF pp. 9-10), ¶ 4-6; Exhibit 22, Affidavit of Nebraska State Patrol Agency Legal Counsel Wendy Wussow (filing 47-1 at CM/ECF pp. 1-2), ¶ 1).

-10-

State Trooper Jeremiah D. Johnson, ¶ 22; see also Exhibit 2, Case Report dated January 29, 2008, p. 2).

35. The CI gave "Telma" $160 in exchange for 1.5 grams of methamphetamine. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 22; see also Exhibit 2, Case Report dated January 29, 2008, p. 2).

36. During the controlled purchase, the surveillance officers observed that the suspect was not Thelma Flores. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 23).

37. After the transaction was complete, "Telma" returned to the Willow Ridge Trailer Park where she parked the vehicle at #20 Burch Lane. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 24; see also Exhibit 2, Case Report dated January 29, 2008, p. 2).[7]

38. As "Telma" returned to the trailer court, Investigator Redinger observed that the license plate of the white Ford F-150 was NE Commercial 18-1294. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 24; see also Exhibit 2, Case Report dated January 29, 2008, p. 2).[8]

39. The CI left the Latino's Shop and met with Trooper Johnson at a designated location. (Exhibit 1, Affidavit of Nebraska State Trooper

---

[7] The case report states that "[a]fter the transaction was complete, DIAZ drove back to the Willow Ridge Trailer Park and parked the vehicle at her residence, #20 Burch Lane" (Exhibit 2, Case Report (filing 30-4) at CM/ECF p. 2). Trooper Johnson now states that he learned during his investigation that Diaz did not reside at this location (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 11), ¶ 48).

[8] Diaz states that she has never owned or driven a white Ford F-150 or a vehicle with a plate NE Commercial 18-1294 (Plaintiff's Brief (filing 33) at CM/ECF p. 8, ¶ 3; Exhibit 101, Affidavit of Telma S. Diaz (filing 36-1 at CM/ECF p. 3), ¶¶ 9, 10).

Jeremiah D. Johnson, ¶ 25; see also Exhibit 2, Case Report dated January 29, 2008, p. 2).

40. The CI gave Trooper Johnson the methamphetamine that "Telma" had sold to the CI. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 25; see also Exhibit 2, Case Report dated January 29, 2008, p. 2).

41. Trooper Johnson then searched the CI and the CI's vehicle for illegal contraband and did not find any. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 25; see also Exhibit 2, Case Report dated January 29, 2008, p. 2).

42. Trooper Johnson then showed the CI a picture of Thelma Flores. The CI indicated that the person the CI purchased methamphetamine from was not the person depicted in the photograph. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 25).

43. [According to Trooper Johnson, t]he CI stated that the CI purchased methamphetamine from "Telma," who was older than Thelma Flores, and the CI believed "Telma's" last name was "Diaz." (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 25).[9]

---

[9] Diaz disputes the informant stated that the seller was older than Thelma Flores and that he believed her last name was Diaz. She interposes several objections.

Diaz first objects that the statement is hearsay. The objection is overruled because the informant's statement is not offered to prove the truth of the matter asserted. See Fed. R. Evid. 801(c)(2).

Second, Diaz asserts that "[t]he claim was not memorialized in Defendant's contemporaneously prepared reports or included in his warrant application. (Exhibit 1A, 2, 8)" (Plaintiff's Brief (filing 33) at CM/ECF p. 3). A lack of supporting documentation does not render the statement inadmissible, nor by itself does it create a genuine issue as to whether the statement was in fact made by the informant. Trooper Johnson has indicated in a supplemental affidavit that he does not ordinarily memorialize details such as this in his case reports, and that he did not prepare a more

-12-

44. Later that day, Trooper Johnson returned to the Nebraska State Patrol Office in Lexington with the CI where he ran the license plate of the white Ford F-150 and found that it was registered to Ana Karina Diaz-Flores. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 26).

45. Trooper Johnson did some additional research and found a "Telma Diaz" (the Plaintiff) matching the CI's description in the Department of Motor Vehicles' records. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 26).

---

detailed investigative memorandum in this instance (Exhibit 21, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 47-1 at CM/ECF p. 9), ¶¶ 2, 3).

Third, Diaz claims that "Defendant testified at the preliminary hearing the informant told him on January 29 he could arrange a transaction with 'Thelma' but did not say her last name and, after the conversation, Defendant thought the informant was referring to Thelma Flores (Exhibit 1, ¶ 15; Exhibit 14, 7:4-8; 10:5-13, 19:7-15)" (Plaintiff's Brief (filing 33) at CM/ECF p. 3). This misstates Trooper Johnson's testimony. Johnson testified that "the informant has a very strong accent and . . . kept on saying Telma, and I thought that he was meaning Thelma. There was a miscommunication with that, so I thought he was naming somebody else. When I showed him a photograph of a female named Thelma, he said, no, that's not her, her name is Telma. . . . I asked him what Telma's last name was and he said Diaz" (Exhibit 14, Preliminary Hearing Transcript (filing 30-16 at CM/ECF p. 19), 19:7-22; Exhibit 1, Affidavit of Trooper Johnson, ¶¶ 15, 25).

Fourth, and finally, Diaz contends that "Defendant also admits that, before displaying any photo of Diaz to the informant, he 'ran the license plate of the white Ford F-150 and found that it was registered to Ana Karina Diaz-Flores,' supporting an inference the informant never reported the Seller's last name because he never knew it; that the officer learned it from the DMV search; and thereby located a picture of Telma Diaz. (Exhibit 1, ¶ 25, 26)" (Plaintiff's Brief (filing 33) at CM/ECF p. 3). As will be discussed, this is not an unreasonable inference under the circumstances. The statement of facts is therefore qualified to indicate that the facts stated in paragraph 43 are "[a]ccording to Trooper Johnson."

-13-

46. That same day Trooper Johnson . . . showed the CI . . . [an] operator license photograph[ ] obtained from records of the Department of Motor Vehicles. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 27).[10]

47. Th[e] photograph[ ] depicted Plaintiff Telma Diaz . . . . (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 27).[11]

---

[10] Trooper Johnson states in his affidavit that he "conducted an informal photographic line-up with the CI, in which he showed the CI five operator license photographs obtained from records of the Department of Motor Vehicles" (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 7), ¶ 27). This statement arguably is inconsistent with Trooper Johnson's testimony at Diaz's preliminary hearing, when he stated that he "searched [the DMV] database and came up with a Telma Diaz, printed off that photo, showed it to [the confidential informant], and he said, yes, that is Telma" (Exhibit 14, Preliminary Hearing Transcript (filing 30-16 at CM/ECF p. 19), 19:20-22). Trooper Johnson also testified: "I showed the informant the photograph of an individual that I believed the informant was talking about, and the informant said it was not that individual.  So I pulled out another photograph and showed it to him and the informant said that it was Telma, and stated that was the female that sold him the methamphetamine" (Exhibit 14, Preliminary Hearing Transcript (filing 30-16 at CM/ECF p. 9), 10:7-13).  Diaz does not dispute that a photograph of her was shown to the confidential informant, and, in fact, she argues that Trooper Johnson's preliminary hearing testimony "supports the inference Defendant found a picture of Telma Diaz by running the license plate, showed the single photo to the informant, and relied on the informant's identification for the arrest two years later" (Plaintiff's Brief (filing 33) at CM/ECF p. 5).

[11] Trooper Johnson states in his affidavit that he showed the confidential informant five photographs depicting "Plaintiff Telma Diaz, Ana Karina Diaz-Flores, Maria Carmen Flores-Diaz, Maria G. Diaz-Flores, and Thelma Flores." (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 7), ¶ 27).

48. The CI . . . stated that the CI had purchased the methamphetamine from [the person depicted in the photograph]. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 27).[12]

49. The photograph of Plaintiff that Trooper Johnson showed the CI was the same photograph that was used on Plaintiff's driver's license from October 14, 2003, through October 20, 2008. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 27; see also Exhibit 3, Plaintiff's Answers to Defendant's Request for Admissions, Response Nos. 1 & 2; Exhibit 4, Copy of Plaintiff's 2008 driver's license, obtained through subpoena to Lexington Public Schools; Exhibit 5, Plaintiff's Request for Admission to Defendant Exhibit C; Exhibit 6, Photographs of Plaintiff from driver's licenses obtained October 14, 2003, and October 20, 2008).[13]

---

[12] Diaz objects that the confidential informant's statement is hearsay. Because the statement is not offered to prove the truth of the matter asserted, but simply to show information that was received by Trooper Johnson during his investigation, the objection is overruled.

[13] Diaz objects to a lack of foundation and "disputes that Exhibit 6 reflects 'true and accurate copies of photographs from Plaintiff's driver's licenses, which she obtained on October 14, 2003, and October 20, 2008.' (Brief, ¶ 49; Exhibit 13, ¶ 11)" (Plaintiff's Brief (filing 33) at CM/ECF p. 5). The objection is overruled. Diaz does not dispute that Exhibit 4 is a copy of the driver's license that was issued to her on October 14, 2003; she also admits that Exhibit 5 appears to be a copy of the photograph from the driver's license she obtained on October 14, 2003, and used through October 20, 2008 (Exhibit 3, Plaintiff's Answers to Defendant's Request for Admissions (filing 30-5 at CM/ECF pp. 1-2), Responses 1 & 2). The same images are depicted in Exhibit 6. In any event, Trooper Johnson avers in his supplemental affidavit that he obtained the two photographs contained in Exhibit 6 from the Nebraska Department of Motor Vehicle's database; that the photograph on the right in Exhibit 6 is a true and accurate copy of Diaz's driver's license photograph, which she obtained on October 14, 2003; and that the other photograph in Exhibit 6 is a true and accurate copy of the photograph from the driver's license Diaz obtained on October 20, 2008. (Exhibit 21, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 47-1 at pp. 4-5), ¶¶ 17-21).

50. While at the office, Trooper Johnson also weighed and tested the methamphetamine purchased from "Telma Diaz" using a methamphetamine narcotics identification kit. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 28; see also Exhibit 2, Case Report dated January 29, 2008, p. 2).

51. The methamphetamine tested positive and weighed approximately 1.5 grams. Trooper Johnson then placed the methamphetamine into evidence. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 28; see also Exhibit 2, Case Report dated January 29, 2008, p. 2).

52. Trooper Johnson asked the CI who Ana Karina Diaz-Flores was and the CI stated that the CI did not know for sure, but thought she was "Telma Diaz's" niece. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 29).[14]

---

Diaz also "disputes that Defendant displayed to the informant the same photo that was on her driver's license between 2003 an 2008" because "Defendant's affidavit does not identify what photo was shown the informant" and "Defendant provides no sufficient foundation for the photograph depicted in Exhibit 6" (Plaintiff's Brief (filing 33) at CM/ECF p. 5). This foundational objection likewise is overruled. Even if this fact was not adequately established in Trooper Johnson's initial affidavit, he states in a supplemental affidavit that he showed the confidential informant a copy of the photograph that was on Diaz's driver's license at the time of the controlled purchases in January 2008. (Exhibit 21, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 47-1 at pp. 5-6, ¶¶ 17-21).

Finally, Diaz "objects based on relevance, as there is no evidence the photos [in Exhibit 6] were displayed to the confidential informant or any other person involved in this case" (Plaintiff's Brief (filing 33) at CM/ECF p. 5). This relevancy objection is also overruled.

[14] Diaz's hearsay objection regarding the informant's statement is overruled because the statement is not offered to prove the truth of the matter asserted. Diaz also disputes that the informant made the statement because "Defendant did not include this claim in his contemporaneously prepared reports or his application for an arrest warrant. (Exhibits 1 A, 2, 8)" and "[t]here is no evidence Defendant has ever

-16-

53. Maria Carmen Flores-Diaz is Ana Karina Diaz-Flores's mother. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 29).[15]

54. Plaintiff has refused to answer an interrogatory indicating whether she knows or is related to Ana Karina Diaz-Flores or Maria Carmen Flores-Diaz. (Exhibit 7, Plaintiff's Answers to Defendant's First Set of Interrogatories, Answer Nos. 8 & 10).[16]

55. Also on January 29, 2008, Trooper Johnson spoke to each of the surveillance officers. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 30).

56. The surveillance officers were unable to definitively identify whether the person who sold the methamphetamine was Plaintiff, the person depicted in the photograph that was identified by the CI. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 30).

---

made this claim any time prior to this lawsuit" (Plaintiff's Brief (filing 33) at CM/ECF p. 6). A lack of documentation or prior disclosure does not create a genuine issue of material fact. The evidence shows that Trooper Johnson did not ordinarily include this type of detail in his case reports (Exhibit 21, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 47-1 at CM/ECF p. 9), ¶ 2), and there is no evidence to show that Trooper Johnson was asked prior to the initiation of this lawsuit to give a detailed explanation of the entire basis for his probable cause determination.

[15] Diaz "disputes that the informant reported that Maria Carmen Florez-Diaz is Ana Karina Diaz-Flores's mother. (Brief, ¶ 53; Exhibit 1, ¶ 29)" (Plaintiff's Brief (filing 33) at CM/ECF p. 6), but it does not appear this information was provided by the informant. Diaz's objection is overruled, and her arguments regarding a lack of documentation or prior disclosure are rejected for the same reasons discussed immediately above.

[16] Diaz now denies that Ana Karina Diaz-Flores is her niece, or that Maria Carmen Flores-Diaz is her sister, and states that she does not know either of these persons (Exhibit 101, Affidavit of Telma S. Diaz (filing 36-1 at CM/ECF p. 3), ¶ 11).

-17-

57. Trooper Johnson later observed the photographs taken by Investigator Redinger and believed they depicted Plaintiff. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 31).[17]

58. The photographs were not clear enough for Trooper Johnson to positively identify Plaintiff with the photographs alone, but when combined with the CI's statements that the CI purchased methamphetamine from someone named "Telma Diaz," the CI's selection of Plaintiff's photograph from the informal lineup,[18] and Trooper Johnson's independent investigation, Trooper Johnson believed that the individual who sold methamphetamine to the CI was Plaintiff. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 31).

59. On January 31, 2008, Trooper Johnson again met with the CI in Lexington. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 32; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

60. Trooper Johnson asked the CI to contact "Telma Diaz" in an attempt to purchase methamphetamine. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 32; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

61. The CI contacted "Telma Diaz" by calling cellular telephone number 308-325-8452 to arrange a controlled purchase of

---

[17] Diaz once again argues that "Defendant did not include this claim in his contemporaneously prepared reports or include it in the affidavit presented in support of an arrest warrant. (Exhibits 1 A, 2, 8)" and that "[t]here is no evidence Defendant has ever made this claim any time prior to this lawsuit" (Plaintiff's Brief (filing 33) at CM/ECF p. 7). For the reasons previously stated, these arguments are rejected.

[18] Although Diaz has not specifically objected to this paragraph, she does dispute that there was a photo "lineup." Trooper Johnson testified he showed the confidential informant Diaz's photograph and admitted on cross-examination that there "[w]asn't a lineup or anything like that" (Exhibit 14, Preliminary Hearing Transcript (filing 30-16 at CM/ECF p. 19), 20:8).

methamphetamine. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 32; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

62. The CI spoke to "Telma Diaz" and told her that the CI wanted to purchase an eight ball of methamphetamine for $275.00. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 32; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

63. "Telma Diaz" agreed to conduct the transaction and told the CI to meet her in the Latino's Shop parking lot. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 32; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

64. Before the CI left to meet "Telma Diaz," Trooper Johnson searched the CI and the CI's vehicle for any illegal contraband and did not find any. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 33; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

65. Trooper Johnson also equipped the CI with an electronic surveillance device, allowing the surveillance officers to record and listen to the conversation between the CI and "Telma Diaz." (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 33; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

66. Trooper Johnson then gave the CI $275.00 to purchase the methamphetamine. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 33; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

67. At 2:50 p.m., the CI drove to the Latino's Shop and parked on the north side of the parking lot. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 34; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

68. Investigator Harris and Trooper Johnson were the only surveillance officers during the controlled purchase. (Exhibit 1, Affidavit

4:12-cv-03144-RGK-CRZ   Doc # 51   Filed: 04/18/13   Page 20 of 41 - Page ID # 518

of Nebraska State Trooper Jeremiah D. Johnson, ¶ 35; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

69. Trooper Johnson was positioned in the same location as he was during the first controlled purchase, which was approximately 700 feet to the north of the controlled purchase. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 35).

70. Investigator Harris was parked across the parking lot from the location of the controlled purchase. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 35).

71. After waiting for a few minutes, Trooper Johnson observed a Hispanic female, who he believed to be Plaintiff, walking across the street from the Willow Ridge Trailer Court to the Latino's Shop. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 36).

72. However, it was cold outside and the person Trooper Johnson believed to be Plaintiff was wearing a coat with a hood, so he could not clearly identify her. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 36).

73. Trooper Johnson observed "Telma Diaz" walk up to the CI's vehicle and make contact with the CI. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 37; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

74. The CI gave "Telma Diaz" $275.00 and "Telma Diaz" gave the CI an eight ball of methamphetamine. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 37; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

75. "Telma Diaz" then returned to the Willow Ridge Trailer Park. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 37).

76. Although Investigators did observe "Telma Diaz" park at #20 Burch Lane after the first controlled purchase, no one observed her enter

-20-

or exit the trailer on any occasion. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 38).

77. After the drug transaction, the CI left the parking lot of the Latino's Shop and met Trooper Johnson at a designated location. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 39; see also Exhibit 8, Case Report dated January 31, 2008, p. 1).

78. The CI then gave Trooper Johnson the methamphetamine that the CI purchased from "Telma Diaz." (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 39; see also Exhibit 8, Case Report dated January 31, 2008, p. 1-2).

79. Trooper Johnson then showed the CI three of the five Department of Motor Vehicles' photographs that Trooper Johnson had previously showed the CI.[19] Specifically, Trooper Johnson showed the CI the photographs of Thelma Flores and Maria Flores-Diaz and the photograph of Plaintiff that the CI had previously identified. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 40).

80. The CI again positively identified the Plaintiff as the individual who sold the CI methamphetamine. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 40; see also Exhibit 8, Case Report dated January 31, 2008, p. 2).

81. Trooper Johnson then searched the CI and his vehicle for illegal contraband and did not find any. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 41; see also Exhibit 8, Case Report dated January 31, 2008, p. 2).

82. Trooper Johnson returned to the Lexington State Patrol Office where he weighed and tested the methamphetamine purchased from "Telma Diaz." The methamphetamine tested positive using a methamphetamine narcotics identification kit. It weighed approximately 2.8 grams. Trooper Johnson then placed the methamphetamine into

---

[19] Although Diaz has not specifically objected to this paragraph, she does dispute that there was a photo "lineup."

evidence. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 42; see also Exhibit 8, Case Report dated January 31, 2008, p. 2).

83. That same day Trooper Johnson spoke to the surveillance officer. Due to the location of the controlled purchase, Investigator Harris was unable to get very close to the suspect. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 43).

84. Investigator Harris was unable to definitively identify whether the person who sold the methamphetamine was Plaintiff, the person depicted in the photograph that was identified by the CI. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 43).

85. Investigator Harris did tell Trooper Johnson that the individual that sold methamphetamine to the CI was not Thelma Flores. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 43).

86. Trooper Johnson later submitted the methamphetamine the CI purchased from "Telma Diaz" on January 29, 2008, and January 31, 2008, to the NSP Crime Laboratory. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 44).

87. The NSP Crime Laboratory determined that the substance purchased on January 29, 2008, was methamphetamine with a net weight of 1.41 grams. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 44; see also Exhibit 9, NSP Laboratory Report dated February 29, 2008).

88. The NSP Crime Laboratory also determined that the substance purchased on January 31, 2008, was methamphetamine with a net weight of 2.63 grams. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 44; see also Exhibit 10, NSP Laboratory Report dated March 13, 2008).

89. Trooper Johnson also investigated the telephone numbers the CI had called to reach "Telma Diaz" and determined that the telephone numbers belonged to TracFone wireless telephones, or throw away

phones, which cannot be traced to a particular owner. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 45).[20]

90. The CI did not know who the telephone numbers belonged to, but said they were the numbers the CI used to get in touch with "Telma Diaz." (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 45).

91. Trooper Johnson searched the NSP database and could not find any other controlled purchases in which these telephone numbers were used. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 45).

92. Trooper Johnson elected not to contact the registered owner of the Ford F-150 because he was concerned that Plaintiff would leave town if she learned about the investigation. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 46).

---

[20] Diaz objects that "[t]here is no foundation for what any investigation showed" (Plaintiff's Brief (filing 33) at CM/ECF p. 7). This objection is overruled. Diaz also claims that "Defendant did not report such investigation in his discovery responses. (Exhibit 103, #10, Exhibit 104, #11 )" (Plaintiff's Brief (filing 33) at CM/ECF p. 7). Trooper Johnson was requested to admit that he "undertook no investigation to determine whether Diaz, her family, or her friends subscribed to a cellular phone with the number 308-324-2596 or 308-325-8452 before arresting Diaz" (Exhibit 103, Defendant's Responses to Plaintiff's Request for Admissions (filing 36-12 at CM/ECF p. 3), Request No. 10). Johnson denied this request for admission and, responding to a written interrogatory that asked him to provide the factual basis for the denial, stated that he "undertook a reasonable investigation to determine the subscriber" of the telephone numbers (Exhibit 104, Defendant's Answers to Plaintiff's First Set of Interrogatories (filing 36-13 at CM/ECF p. 9). Although Trooper Johnson did not disclose the results of his investigation, he was not specifically asked to do so in the written interrogatory.

Diaz states that she "has never used a Trac phone [*sic*] or a phone with the number 308-3242696 or 308-325-8452" (Plaintiff's Brief (filing 33) at CM/ECF p. 8, ¶ 5; Exhibit 101, Affidavit of Telma S. Diaz (filing 36-1 at CM/ECF p. 3), ¶ 13).

93. Trooper Johnson did learn that Plaintiff did not have a criminal history, however, that did not eliminate her as a suspect. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 47).[21]

94. Trooper Johnson also learned that Plaintiff did not reside at the trailer where the suspect may have come from and returned to during each of the controlled purchases. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 48).[22]

95. After Trooper Johnson's controlled purchases with "Telma Diaz," he conducted controlled purchases from other individuals at the same trailer, some of whom did not reside at the trailer. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 49).

96. The trailer itself and the Willow Ridge Trailer Park in general are well known for high drug activity. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 49).

97. After the seasoned and reliable CI twice identified Plaintiff as the person who sold the CI methamphetamine, both by name and photograph, and after Trooper Johnson determined that the registered owner of the Ford F-150 was Ana Karina Diaz-Flores, who the CI identified as the niece or relative of "Telma Diaz," and after Trooper Johnson's continued investigation did not eliminate Plaintiff as a suspect, Trooper Johnson believed he had probable cause to arrest Plaintiff. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 50).

---

[21] Diaz states that she has never used, possessed or sold methamphetamine or any other controlled substance, except those prescribed by a physician (Plaintiff's Brief (filing 33) at CM/ECF p. 8, ¶1; Exhibit 101, Affidavit of Telma S. Diaz (filing 36-1 at CM/ECF p. 2), ¶ 6).

[22] Diaz states that she has never resided at the Willow Ridge Trailer Park, has never had friends or relatives that lived there, and does not remember ever visiting anyone that has lived there (Plaintiff's Brief (filing 33) at CM/ECF p. 8, ¶ 6; Exhibit 101, Affidavit of Telma S. Diaz (filing 36-1 at CM/ECF pp. 2-3), ¶ 7).

98. Trooper Johnson did not immediately apply for an arrest warrant for Plaintiff because, in his experience, once arrests are made in a case involving a CI, that CI becomes known and can no longer be used in other cases. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 51).

99. On March 31, 2010, Trooper Johnson drafted an Affidavit in Support of Arrest Warrant, in which he set out what he reasonably believed to be probable cause to arrest Plaintiff. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 52; see also Exhibit 11, Affidavit in Support of Arrest Warrant).

100. On that same date, Dawson County Court Judge Clark reviewed Trooper Johnson's Affidavit and issued an Arrest Warrant finding that there were reasonable grounds to believe that Plaintiff distributed methamphetamine on January 29, 2008, and January 31, 2008. Accordingly, Judge Clark found probable cause existed to arrest Plaintiff and commanded Trooper Johnson to pursue and arrest Plaintiff. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 53; see also Exhibit 12, State Warrant).

101. Trooper Johnson then proceeded to Plaintiff's place of employment, Morton Elementary School in Lexington, to make the arrest. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 54).[23]

102. Trooper Johnson entered the school with Dawson County Sheriff Deputy Sergeant Cheri Saunders. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 54).[24]

---

[23] Diaz states that she had been working for the Lexington Public Schools since March 19, 2008 (Plaintiff's Brief (filing 33) at CM/ECF p. 9, ¶ 11).

[24] Diaz states that she called the Dawson County Sheriff's Office five times between 2006 and the date of her arrest in 2010, each time providing her name, address, and telephone number, and that deputies responded to four of these calls (Plaintiff's Brief (filing 33) at CM/ECF p. 8, ¶ 9; Exhibit 101, Affidavit of Telma S. Diaz (filing 36-1 at CM/ECF pp. 4-5), ¶¶ 15-19).

103. Trooper Johnson and Deputy Saunders were both dressed in plain clothes and were very discrete during the course of the arrest. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 54; see also Exhibit 3, Plaintiff's Answers to Defendant's Request for Admissions, Response No. 6).

104. Trooper Johnson and Deputy Saunders contacted the school principal in his office and identified themselves. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 54).

105. The school principal then called Plaintiff to his office and they arrested Plaintiff behind closed doors. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 54; see also Exhibit 3, Plaintiff's Answers to Defendant's Request for Admissions, Response No. 7).

106. Trooper Johnson and Deputy Saunders handcuffed Plaintiff with her hands in front of her and placed a coat over her handcuffs so coworkers and children would not see. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 54; see also Exhibit 3, Plaintiff's Answers to Defendant's Request for Admissions, Response Nos. 8 & 9).

107. Trooper Johnson and Deputy Saunders then discretely exited the school with Plaintiff. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 54).

108. To Trooper Johnson's knowledge, no one in the school, other than the principal, knew who the officers were, why they were there, or that the arrest was taking place. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 54).

109. No one at the school, other than the school principal, was made aware of the arrest. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 54).

110. At the time Trooper Johnson arrested Plaintiff, he had a warrant for her arrest, and believed he had probable cause to make the

-26-

arrest. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 55; Exhibit 12, State Warrant).

111. After Plaintiff was arrested, NSP Trooper Ken Moody transported her from the school to the Dawson County Jail. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 56).

112. Trooper Johnson was not involved in the booking process, and does not know if Plaintiff was strip searched. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 56).

113. On March 31, 2010, Plaintiff was charged with two counts of distribution of methamphetamine. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 58).

114. On April 28, 2010, Trooper Johnson testified during Plaintiff's preliminary hearing in the County Court of Dawson County, Nebraska. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 59; see also Exhibit 14, Preliminary Hearing Transcript).

115. During the preliminary hearing, Dawson County Court Judge Clark found there was probable cause that Plaintiff was involved in the commission of the crimes charged and bound the case over to the Dawson County District Court. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 59; see also Exhibit 14, Preliminary Hearing Transcript, p. 23).

116. The charges against Plaintiff were later dismissed after the CI saw her in person on September 10, 2010, and was unable to identify her as the person who sold the CI methamphetamine. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 61).[25]

---

[25] When asked during a deposition on September 10, 2010, whether he knew Diaz, the confidential informant responded, "I think truthfully I never had anything to do with her" (Exhibit 101-B, Deposition of CI #595-3541 (filing 36-3 at CM/ECF p. 3), 6:20-23). Diaz states that she does not know the confidential informant (Plaintiff's Brief (filing 33) at CM/ECF p. 8, ¶ 8; Exhibit 101, Affidavit of Telma S. Diaz (filing 36-1 at CM/ECF pp. 3-4), ¶ 14).

117. Plaintiff's appearance may have changed during the period from January of 2008 to September of 2010, so that the CI was unable to identify her at the later date. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 62).

118. Plaintiff's appearance has changed dramatically in the past due to weight gain and weight loss. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 62; see also Exhibit 6, Photographs of Plaintiff from driver's licenses obtained October 14, 2003, and October 20, 2008).

119. Plaintiff has objected to Trooper Johnson's discovery request for pictures that would show what she looked like on the applicable dates. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 62; see also Exhibit 15, Plaintiff's Responses to Defendant's Request for Production of Documents, Response No. 6).

120. Plaintiff has also refused to answer an interrogatory asking her to provide a description of her height and weight during the relevant dates, and explain the reasons for her weight gains and losses. (Exhibit 7, Plaintiff's Answers to Defendant's First Set of Interrogatories, Answer No. 12).

121. Plaintiff claims that she was four feet, five inches tall at the time of her arrest. (Filing No. 1, Complaint, ¶ 22).

122. However, Plaintiff's driver's license that was in effect from October 14, 2003, through October 20, 2008, states that she is four feet, ten inches tall. (Exhibit 4, Copy of Plaintiff's 2008 driver's license obtained through subpoena to Lexington Public Schools).

123. Plaintiff has also refused to provide Trooper Johnson or his counsel a copy of her current driver's license. (Exhibit 15, Plaintiff's Responses to Defendant's Request for Production of Documents, Response No. 6).

124. After the charges against Plaintiff were dismissed, the methamphetamine obtained from the controlled purchases conducted on

-28-

January 29, 2008, and January 31, 2008, was destroyed. (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson, ¶ 63).

125. Plaintiff worked for Tyson Foods, Inc, until February 20, 2008. (Exhibit 16, Copy of Plaintiff's Tyson employee information obtained through subpoena to Tyson Foods, Inc.).

126. It is unclear whether Plaintiff now claims she was actually working on the dates and times of the two controlled purchases, however, a subpoena sent to Tyson Foods, Inc., asking for Plaintiff's personnel file and dates worked did not reveal whether Plaintiff worked during the dates and times of the controlled purchases. (Exhibit 13, Affidavit of Kari Scheer, ¶ 4).[26]

127. Plaintiff began working for the Lexington Public Schools on March 19, 2008. (Exhibit 17, Letter from Lexington Public Schools obtained in response to subpoena).

(Defendant's Brief (filing 29) at CM/ECF pp. 1-24.)

## III.  DISCUSSION

### A.  Fourth Amendment Claim

"[I]t is clearly established that the Fourth Amendment requires a warrant application to contain a truthful factual showing of probable cause . . .." *Hunter v. Namanny*, 219 F.3d 825, 831 (8th Cir. 2000). "A warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment." *Small v. McCrystal*, 708 F.3d 997, 1006 (8th Cir. 2013)

---

[26] Diaz states that she was working on the trim line at Tyson Foods or waiting for her daughter at the pre-school next door during each of the controlled buys (Plaintiff's Brief (filing 33) at CM/ECF p. 8, ¶ 2; Exhibit 101, Affidavit of Telma S. Diaz (filing 36-1 at CM/ECF p. 2), ¶ 5).

(quoting *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996)). "To show reckless disregard for the truth, we do not look simply at whether a statement included in the affidavit was true; rather, we ask whether, when looking at all the evidence available to the officer, the officer 'must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported.'" *United States v. Neal*, 528 F.3d 1069, 1072 (8th Cir. 2008), (quoting *United States v. Schmitz*, 181 F.3d 981, 986-87 (8th Cir. 1999) (alterations in original)).

A police officer applying for an arrest warrant is not entitled to qualified immunity from a § 1983 suit if a reasonably well-trained officer in the officer's position would have known that the officer's affidavit failed to establish probable cause and that the officer should not have applied for the warrant. *Cooper v. Martin*, 634 F.3d 477, 480 (8th Cir. 2011). "As this standard makes clear, there need not be actual probable cause for an officer to be shielded by qualified immunity; an objectively reasonable belief that there was probable cause is enough." *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) (quoting *George v. City of St. Louis*, 26 F.3d 55, 57 (8th Cir. 1994)).

"When a confidential informant provides information in support of a . . . warrant, the issuing magistrate considers the informant's reliability and the basis of his knowledge." *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010) (citing *United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004)). "The totality of the circumstances analysis applicable to probable cause determinations, however, does not mandate that both factors be present before a warrant may issue." *Id.* (citing *United States v. Anderson*, 933 F.2d 612, 615 (8th Cir. 1991)). "The information from a confidential informant is sufficiently reliable if it is corroborated by other evidence, or if the confidential informant has a history of providing reliable information." *Id.* (citing *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)).

-30-

Trooper Johnson contends the arrest warrant shields him from liability because the warrant was obtained based upon information provided by a reliable informant. He states that "great deference" should be given to Judge Clark's probable cause determination under these circumstances (Defendant's Brief (filing 29) at CM/ECF p. 33, citing *Butler*, 594 F.3d at 962).   However, the affidavit Trooper Johnson submitted in support of the warrant contained absolutely no facts from which Judge Clark could make a determination of the confidential informant's reliability. Apart from an introductory statement concerning Trooper Johnson's training and experience, the only facts stated in the affidavit were as follows:

I.

On Tuesday, January 29, 2008, Confidential Informant #595-3541 made arrangements, with affiant, to conduct a controlled purchase of 1.5 grams of methamphetamine from TELMA S. DIAZ for $160.00. The controlled purchase was made in the parking lot of Latino's Shop located at 731 East Pacific Street in Lexington, Dawson County, Nebraska. The controlled purchase was made under the supervision of this affiant.

Affiant monitored the controlled purchase using surveillance equipment. The controlled purchase was recorded by using an audio digital recorder. After the controlled purchase was made, the Confidential Informant verified that the purchase was made from TELMA DIAZ by identifying a photograph provided by affiant.

Affiant submitted the methamphetamine that was purchased from DIAZ to the Nebraska State Patrol Crime Laboratory for examination. The Crime Laboratory tested and weighed the methamphetamine. The results of this test showed that this substance was, in fact, methamphetamine, a Schedule II drug. The total net weight of the methamphetamine was 1.41 grams.

II.

On   Thursday, January  31,  2008,  Confidential  Informant #595-3541 made arrangements, with affiant, to conduct a controlled

purchase of 2.8 grams of methamphetamine from TELMA S. DIAZ for $275.00. The controlled purchase was made in the parking lot of Latino's Shop located at 731 East Pacific Street in Lexington, Dawson County, Nebraska. The controlled purchase was made under the supervision of this affiant.

Affiant monitored the controlled purchase using surveillance equipment. The controlled purchase was recorded by using an audio digital recorder. After the controlled purchase was made, the Confidential Informant verified that the purchase was made from TELMA DIAZ by identifying a photograph provided by affiant.

Affiant submitted the methamphetamine that was purchased from DIAZ to the Nebraska State Patrol Crime Laboratory for examination. The Crime Laboratory tested and weighed the methamphetamine. The results of this test showed that this substance was, in fact, methamphetamine, a Schedule II drug. The total net weight of the methamphetamine was 2.63 grams.

(Exhibit 11, Affidavit in Support of Arrest Warrant (filing 30-13), at CM/ECF p. 2.) None of the facts regarding the confidential informant's prior dealings with Trooper Johnson or other NSP investigators were provided to Judge Clark.[27]

"It is established law that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter. *Franks v. Delaware*, 438 U.S. 154, 165 (1978) (citations omitted). "If an informant's tip is the source of information, the affidavit must recite . . . some of the underlying circumstances from

---

[27] It is not clear from the statement of material facts that Trooper Johnson had any prior or subsequent dealings with this confidential informant. Trooper Johnson has only indicated that the confidential informant "had worked with two separate NSP investigators over a period of two to three years," that both investigators had "told Trooper Johnson that the CI was reliable," and that "[d]uring his use of the CI, Trooper Johnson also found the CI to be reliable" (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 4), ¶¶ 13, 14).

which the officer concluded that the informant, whose identity need not be disclosed, was credible or his information reliable." *Id.* (internal quotations and citations omitted).

The reliability issue in the present case concerns the confidential informant's identification of Diaz as the individual who sold him drugs twice in January 2008. The affidavit merely indicates the confidential informant identified Diaz from a photo that Trooper Johnson showed him following the controlled purchases. No particulars were provided about the photo identification or about any prior contact the informant may have had with the person who sold him the methamphetamine. It is only known that the informant had a telephone number that he used to contact "Telma"—a number that was later determined to belong to an untraceable, disposable phone.

The affidavit is also misleading. Trooper Johnson affirmatively represented that, on January 29, 2008, the confidential informant "made arrangements, with affiant, to conduct a controlled purchase of 1.5 grams of methamphetamine from TELMA S. DIAZ for $160.00." This representation is at odds with the undisputed facts of record, which show that Trooper Johnson thought the confidential informant would be purchasing the methamphetamine from Thelma Flores, who was a known drug dealer and "high priority target for the Nebraska State Patrol."[28] The affidavit further states that the confidential informant subsequently "*verified* that the purchase was made from TELMA DIAZ by identifying a photograph provided by affiant." (Emphasis supplied.) This statement reinforces the false impression that Trooper Johnson understood Diaz was the target of the first controlled buy.

_____

[28] In an affidavit submitted in support of his motion for summary judgment, Trooper Johnson states that the confidential informant had arranged to purchase methamphetamine from "someone named Telma" but that he "did not tell [Trooper Johnson] her last name" (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF pp. 4-5), ¶ 15).

-33-

"A facially valid warrant affidavit is constitutionally infirm if the defendant establishes that the affidavit includes deliberate or reckless falsehoods that, when redacted, render the affidavit's factual allegations insufficient to support a finding of probable cause." *United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004) (citing *Franks*, 438 U.S. at 171). "Omissions likewise can vitiate a warrant if the defendant proves 'first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.'" *Id.* (quoting *United States v. Allen*, 297 F.3d 790, 795 (8th Cir. 2002)). "[R]ecklessness may be inferred from the fact of omission of information from an affidavit . . . only when the material omitted would have been clearly critical to the finding of probable cause." *United States v. Thompson*, 690 F.3d 977, 987 (8th Cir. 2012) (quoting *United States v. Ozar*, 50 F.3d 1440, 1445 (8th Cir.1995) (internal quotation marks omitted)).

The Eighth Circuit has held that "qualified immunity is appropriate if [a] defendant has been accused of submitting a recklessly false affidavit and if a corrected affidavit would still provide probable cause to arrest or search." *Bagby v. Brondhaver*, 98 F.3d 1096, 1099 & n. 2 (8th Cir. 1996) (but "express[ing] no view as to whether a defendant whose affidavit contained a deliberate falsehood should be entitled to qualified immunity if a corrected affidavit would still provide probable cause"). Of course, "[t]he party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." *Winslow v. Smith*, 696 F.3d 716, 730 (8th Cir. 2012) (quoting *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008)).

Other than the confidential informant's identification, there is no evidence linking Diaz to the drug deals. The officers who conducted surveillance of the first controlled buy could tell that the seller was not Thelma Flores (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 6), ¶ 23), but they "were unable to definitively identify whether the person who sold the

-34-

methamphetamine was Telma Diaz, the person depicted in the photograph that was identified by the CI" (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 8), ¶ 30). Trooper Johnson later viewed the surveillance photos taken by Investigator Redinger (which have since disappeared), but they were not clear enough for him to positively identify Diaz, either (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 8), ¶ 31). At the second controlled buy, Investigator Harris again could tell that the seller was not Thelma Flores, but she "was unable to definitively identify whether the person who sold the methamphetamine was Telma Diaz, the person depicted in the photograph that was identified by the CI" (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 10), ¶ 43). Trooper Johnson also did not get a good look at the seller during the January 31, 2008 transaction (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 9), ¶ 36).

The white pickup truck the seller drove was not registered to Diaz, and she did not have any known connection to the vehicle. The informant evidently told Trooper Johnson that the vehicle might belong to "Telma Diaz's" niece (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 8), ¶ 29), but there is no factual basis for the informant's conjecture in the record. It was assumed that Diaz resided in the trailer park located across the street from parking lot where the controlled buys took place, because the seller was observed coming from and returning there, but Trooper Johnson learned this assumption was untrue before he applied for the arrest warrant (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 11), ¶ 48). He also discovered before Diaz's arrest that she did not have a criminal record (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 11), ¶ 47).

Although the evidence shows that the informant had identified Diaz before making arrangements with Trooper Johnson for the second controlled purchase, the reliability of such identification—or, more specifically, the objective reasonableness

-35-

of Trooper Johnson's reliance upon such identification in seeking a warrant for Diaz's arrest—has not been established.  According to Trooper Johnson, the confidential informant (CI) stated on January 29, 2008, that "the CI purchased methamphetamine from Telma, who was older than Thelma [Flores], and the CI believed Telma's last name was Diaz" (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 7), ¶ 25).  The factual basis for the confidential informant's "belief" regarding the seller's last name is unknown.  "When the affidavit is based substantially on information provided by an informant, evidence of the informant's . . . basis of knowledge is highly relevant to the probable cause determination . . .." *Ketzeback*, 358 F.3d at 991.

Trooper Johnson states that the confidential informant did not tell him "Telma's" last name before the controlled buy on January 29, 2008 (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF p. 5), ¶ 15).  Unless Trooper Johnson failed to ask the informant for a last name, which seems unlikely,[29] it might reasonably be inferred that the informant did not know "Telma's" last name at the time he arranged the first purchase.[30]

Trooper Johnson also states that the informant subsequently expressed a belief that "Telma's" last name was "Diaz."  In the affidavit submitted in support of the motion for summary judgment, Trooper Johnson suggests this occurred before he searched the DMV database to find Diaz's photo (Exhibit 1, Affidavit of Nebraska

---

[29] It also seems unlikely that Trooper Johnson would not have asked the informant if he was referring to Thelma Flores.  Trooper Johnson organized the controlled buy in the belief that the seller was this "high priority target," and he was assisted in the surveillance effort by three other NSP investigators and a DEA agent—all for the purchase of a "teener" of methamphetamine.  For the second controlled buy, after Trooper Johnson learned that Thelma Flores was not the seller, only one other officer assisted.

[30] Also, no evidence has been presented to show that the informant learned "Telma's" last name during the drug deal (which was monitored and recorded).

State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF pp. 7), ¶¶ 25-26).  Diaz points out that Trooper Johnson first ran a search on the license plate of the white pickup truck that was driven by the seller, and discovered it was registered to Ana Karina Diaz-Flores.  Trooper Johnson states in his affidavit that he then "did some additional research and found a Telma Diaz matching the CI's description[31] in the Department of Motor Vehicles' records."  (Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF pp. 7), ¶ 26).  As Diaz contends, it might reasonably be inferred that Trooper Johnson's "additional research" stemmed from the name "Diaz" appearing in the vehicle registration information, and not because the confidential informant mentioned the name.

Diaz also notes that Trooper Johnson has given conflicting accounts concerning the confidential informant's identification of her photo.  In the affidavit submitted in support of the summary judgment motion, Trooper Johnson states:

> That same day [*i.e.*, January 29, 2008] I conducted an informal photographic line-up with the CI, in which I showed the CI five photographs obtained from records of the Department of Motor Vehicles. More specifically, the photographs were operator license photographs. Those photographs depicted Telma Diaz, Ana Karina Diaz-Flores, Maria Carmen Flores-Diaz, Maria G. Diaz-Flores, and Thelma Flores. The CI picked the photograph of Telma Diaz, the Plaintiff in this action, and stated that the CI had purchased the methamphetamine from her.

(Exhibit 1, Affidavit of Nebraska State Trooper Jeremiah D. Johnson (filing 30-1 at CM/ECF pp. 7), ¶ 27.)  In the case report he prepared on January 30, 2008, Trooper Johnson did not mention this "photographic line-up." [32]  At the preliminary hearing,

---

[31] The only description the confidential informant appears to have given is that the person who sold him the methamphetamine was older than Thelma Flores (as depicted in a photo he was shown by Trooper Johnson).

[32] In fact, the report seems to indicate that a photo of Diaz was shown to the confidential informant immediately following the first controlled purchase, as Trooper

-37-

Trooper Johnson only indicated he showed the confidential informant two photos—one of Thelma Flores and one of Telma Diaz.  When asked if he had talked to the confidential informant after the first controlled buy, Trooper Johnson testified:

> I did. I showed the informant the photograph of an individual that I believed the informant was talking about, and the informant said it was not that individual. So I pulled out another photograph and showed him and the informant said that it was Telma, and stated that was the female that sold him the methamphetamine.

(Exhibit 14, Preliminary Hearing Transcript (filing 30-16 at CM/ECF p. 9), 10:7-13.) Trooper Johnson even admitted on cross-examination that there "[w]asn't a lineup or anything like that" (Exhibit 14, Preliminary Hearing Transcript (filing 30-16 at CM/ECF p. 19), 20:8).

The court finds there is a genuine issue of material fact as to whether the confidential informant told Trooper Johnson, prior to being shown Diaz's photo, that he believed the seller's name was Telma Diaz.  Resolution of this critical fact issue will require a jury assessment of Trooper Johnson's credibility.  *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

---

Johnson related the following sequence of events:

> The CI left the Latino's Shop and met with Investigator Johnson. The CI gave Investigator Johnson the methamphetamine that was given to the CI by DIAZ. Investigator Johnson showed the CI a photo of TELMA DIAZ. The CI positively identified DIAZ as the individual that sold the CI methamphetamine. Investigator Johnson searched the CI and the CI's vehicle for any illegal contraband. Investigator Johnson did not find any illegal contraband.

(Exhibit 2, Case Report (filing 30-4) at CM/ECF p. 2.)

-38-

B.  *Substantive Due Process Claim*

It is alleged that Trooper Johnson violated Diaz's right to substantive due process because he "was deliberately indifferent to whether Diaz was properly identified as the person involved in the drug transaction and intentionally or recklessly failed to employ reliable investigative procedures prior to placing her under arrest" (Plaintiff's Complaint (filing 1 at CM/ECF p. 5), ¶ 41).  To the extent that Diaz again challenges the objective reasonableness of Trooper Johnson's belief that her arrest was supported by probable cause, this claim is duplicative of the Fourth Amendment claim.[33]  The Eighth Circuit has held, however, that there is a clearly established due process right against a reckless criminal investigation.  *See Winslow*, 696 F.3d at 739 (discussing *Wilson v. Lawrence County*, 260 F.3d 946 (8th Cir. 2001)).

To establish a substantive due process violation, Diaz must demonstrate that Trooper Johnson's conduct shocks the conscience.  *See Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013).  "Negligence and even gross negligence is not enough because the state action must be 'truly egregious and extraordinary" to shock the conscience, *Winslow*, 696 F.3d at 735-36  (quoting *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir.2012)) (internal quotation marks omitted), and so severe as to amount to 'brutal and inhumane abuse of official power,' *id.* (quoting *Golden ex rel. Balch v. Anders*, 324 F.3d 650, 653 (8th Cir. 2003)) (internal quotation marks

---

[33] "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C. J.)).  "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Albright*, 510 U.S. at 274. *See, e.g., Smithson v. Aldrich*, 235 F.3d 1058, 1064 (8th Cir. 2000) (arrestees could not pursue due process claim alleging that arrest occurred without probable cause, which was properly addressed under Fourth Amendment analysis).

omitted)." *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012). "Investigators shock the conscience when they (1) attempt to coerce or threaten the criminal defendant, (2) purposefully ignore evidence of the defendant's innocence, or (3) systematically pressure to implicate the defendant despite contrary evidence." *Folkerts*, 707 F.3d at 981 (citing *Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009)).

Diaz criticizes Trooper Johnson as not being thorough in this investigation—for example, not conducting a "knock and talk" at her residence, not interviewing her neighbors, not checking with her employer (Plaintiff's Brief (filing 33) at CM/ECF p. 19)—but she has not demonstrated an intentional or reckless failure to investigate. "An officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct." *Akins*, 588 F.3d at 1184.

## IV.  CONCLUSION

Because the evidence is inconclusive on the issue of whether Trooper Johnson had an objectively reasonable belief that there was probable cause to arrest Diaz, he is not entitled to qualified immunity on the Fourth Amendment claim.  Because Diaz has not produced sufficient evidence to prove that Trooper Johnson conducted a reckless investigation, her substantive due process claim fails as a matter of law.

Accordingly,

IT IS ORDERED:

1.    Defendant's motion to seal Plaintiff's brief and summary judgment index (filing 41) is denied.  Plaintiff's objection (filing 43) is sustained.

2.    Defendant's motion for summary judgment based on qualified immunity
      (filing 28) is granted in part and denied in part, as follows:

      a.    The motion is granted with respect to the substantive due process
            claim (second cause of action of Plaintiff's complaint), and said
            claim is dismissed with prejudice; and

      b.    In all other respects, the motion is denied.

April 18, 2013.                    BY THE COURT:

                                   s/ *Richard G. Kopf*
                                   Senior United States District Judge

---

* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for
the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services
or products they provide on their Web sites. Likewise, the court has no agreements with any of these third
parties or their Web sites. The court accepts no responsibility for the availability or functionality of any
hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect
the opinion of the court.